# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAHER HABIB AL SAAD ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 13-133E |
| ) | |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

### I. *Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Taher Habib Al Saad ("Plaintiff" or "Claimant") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434 and 1381-1383f (2012). Plaintiff argues that the decision of the Administrative Law Judge ("ALJ") was erroneous and the Commissioner committed legal error when evaluating Plaintiff's symptoms and impairments by failing to comply with the requirements of SSR 96-6p ("Policy Interpretation Ruling Titles II and XVI") and 20 C.F.R. § 416.927(c)(3) ("Evaluating opinion evidence"). The Commissioner's decision was not supported by substantial evidence as required by 42 U.S.C. § 405(g) [See ECF No. 9 at 1].

To the contrary, Defendant argues that the ALJ properly evaluated the entire record and determined that despite numerous severe impairments, Plaintiff retained a Residual Functional

Capacity ("RFC") to perform a limited range of unskilled light work. [ECF No. 11 at 1]. Therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

The Court has reviewed the record in its entirety and for the reasons stated below, we will grant the Plaintiff's Motion for Summary Judgment and deny the Defendant's Motion for Summary Judgment.

## II. *Procedural History*

The Plaintiff filed applications for DIB and SSI on August 18, 2009 (R. at 134-145) alleging disability since April 17, 2008, due to lower back problems and depression (R. at 134-145; R. at 157). Plaintiff's claims were denied at the initial level of the administrative review process on December 15, 2009 (R. at 83-92). Plaintiff requested a hearing on January 14, 2010 (R. at 95-97). ALJ Melvin D. Benitz conducted a *de novo* hearing on May 6, 2011 (R. at 55-72). Present at the hearing was Vocational Expert (VE), Mitchell A. Schmidt (R. at 107). On May 24, 2011, the ALJ determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act (R. at 37). The ALJ stated, "After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from April 17, 2008, through the date of this decision." (R. at 37). The Plaintiff filed a timely written request for review by the Appeals Council which was denied on September 13, 2012 and subsequently denied again on March 14, 2013 after Plaintiff's Counsel sent written argument to the Appeal's Counsel, [ECF No. 9 at 1], making the ALJ's decision the final decision of the Acting Commissioner. An appeal was subsequently filed by Plaintiff who seeks review of the ALJ's decision.

While Plaintiff's application for benefits was based upon back pain and depression, the only medical issue on appeal is Plaintiff's mental health issues. Therefore, our analysis will cover only those records that address Plaintiff's alleged depression and mental health issues.

### III. Medical History

Plaintiff reported being a factory laborer from 1998-2000; being a machine operator from 1999-2002; and being a jitney driver from April 2005 to April of 2008 (R. at 158). For the record, Plaintiff injured his back in an on-the-job accident as a forklift operator in April 2008. The initial disability claim submitted previous to this current claim due to his resulting back pain (a skin condition and depression were also part of this claim) was denied by the ALJ and is not on appeal before this Court.

On May 7, 2008 Dr. Roger Esper determined Plaintiff to be temporarily disabled due to his back pain and depression and said the disability was expected to last until October 7, 2008 (R. at 318). His assessment was based on a physical examination, review of medical records, and clinical history (R. at 318). At the time of this report Dr. Esper reported that Plaintiff was taking the following medications: Effexor XR 75 mg and 37.5 mg, Darvocet-N 100, Seroquel 50 mg one daily and two at night (R. at 258).

On September 19, 2008, Plaintiff saw John C. Kalata, D.O. complaining of back pain and depression (R. at 258). Dr. Kalata reported that Plaintiff was already attending Safe Harbor Outpatient Behavioral Health Clinic and was seeing Dr. Simora for his depression (R. at 258). Dr. Kalata provided the following impressions of Plaintiff's case after examination: Chronic depression, polypharmacy, insomnia, and hallucination associated with depression (R. at 261). Dr. Kalata provided a prognosis of "guarded" for Plaintiff and recommended that Plaintiff seek out psychotherapy (R. at 261). Dr. Kalata's diagnostic impressions were: Major Depression,

recurrent, Post-traumatic Stress Disorder ("PTSD") symptoms, psychological factors affecting medical condition (R. at 279-80).

The medical record contains Psychiatric Progress notes completed by a consulting psychiatrist from Multi-Cultural Health Evaluation Delivery System, Inc. ("MHEDS") (R. at 375- 387; 390- 395). The content and the dates of the notes are mostly indecipherable. However, Antonio Simora, D.O., who is the treating psychiatrist, diagnosed the Plaintiff with temporary incapacity dating from June 30, 2008 to October 11, 2010 (R. at 234). He provided the primary diagnosis of Major Depression with psychotic features and PTSD (R. at 389). In his Brief In Support of Motion for Summary Judgment, Plaintiff reports that it should be noted that his medications were either changed or dosages increased on 13 of the 16 office visits with Dr. Simora [ECF No. 9 at 22], indicating the instability of Plaintiff's condition.

On October 1, 2008, Glenn Bailey, Ph.D. performed a mental status evaluation on Plaintiff by request of the Social Security Administration (R. at 274). At the time of the interview Plaintiff was taking propoxyphene/APAP 100/650mg one every six hours as needed, Seroquel 50 mg once daily and two at night, Effexor 37.5 mg once daily and Effexor 75 mg once daily, he will use Tylenol 500mg one to two per day (R. at 276). Dr. Bailey noticed that the Plaintiff appeared to be depressed and lethargic. Plaintiff reported his sleep is poor and his appetite fluctuates (R. at 277). The Doctor noticed only fair concentration and noted that Plaintiff had considered hurting himself (R. at 277). Plaintiff reported to the Doctor that he has been fearful since his father was taken away from the family and killed and he is still bothered by memories and nightmares of things that happened to his family and to him when he was in a refugee camp in Saudi Arabia (R. at 277).

On December 7, 2009 Dr. Bailey performed another mental status evaluation at the request of the Bureau of Disability Determination Social Security Office (R. at 341-51). This evaluation was an update to his previous report on October 1, 2008. Dr. Bailey notes no significant changes in his impression of Plaintiff and stated that Plaintiff continued to be seen at MHEDS Clinic for his psychiatric medications. At the time of this evaluation Plaintiff was taking Seroquel 400 mg one hs, hydroxyzine pam. 50 mg one every 8 hours as needed, venlafaxine HCL 75 mg two b.i.c., propoxyphene/APAP 100/650 mg one every six hours as needed, mometasone furoate cream, ketoconazole cream, and triamcinolone ointment. Plaintiff said he also was taking another medicine as a sleep aid. (R. at 343).

Plaintiff indicated to Dr. Bailey that he continues to be depressed and lethargic and he tends to just sit around the house and not do anything. His sleep is poor and he reports having nightmares and flashbacks of traumatic incidents that he had to endure in Iraq (R. at 343-44). His appetite is poor (R. at 343-44). Dr. Bailey's impressions were that Plaintiff's difficulties are coming from his ongoing physical problems and from his trauma from the past. Dr. Bailey stated that he thought Plaintiff was being truthful and he considered Plaintiff's prognosis to be poor unless he gets help dealing with the traumas he has experienced (R. at 346). Dr. Bailey recommended an evaluation and therapy by a psychiatrist (R. at 346).

On January 13, 2011 Plaintiff began outpatient mental health treatment at Stairways Behavioral Health ("Stairways") which was performed by Sean Su, M.D. (R. at 234). Plaintiff presented to Dr. Su with the issues of depression and losing facial hair due to depression (R. at 397). The intake summary is as follows:

> Taher reports having a long history of being tortured by the Iraq government. He reports witnessing his father's murder. Taher reports that in 1997 he fled to Serbia to escape the Iraq government. Taher reports having nightmares about these events and developing headaches after the nightmares. He

5

reports only sleeping on average two hours a night. Taher reports feelings of depression such as hopelessness, helplessness and no hope for the future. He reports having racing thoughts that he cannot control and he does develop headaches from this as well. He reports that he isolates from people and does not leave the house unless he has to... Taher is having a psych evaluation, possibly seeking psychopharmacology and will be pursuing counseling services when he returns home from a trip he is taking.

(R. at 399).

In a subsequent Stairways psychiatric report by Dr. Su dated May 4, 2011 the Mental Status Exam reads as follows:

Taher is found to be awake and alert. The examination had to be done through an interpreter since Taher apparently is unable to speak or understand much English. Taher appears to be able to answer questions appropriately though the interpreter. His mood is depressed. His affect is blunted. He denies any current suicidal ideation. He denies any current homicidal ideation. Taher indicates having history of hallucinations which apparently are related to nightmares and flashbacks regarding past trauma but he denies any current hallucinations. There currently is no clear evidence of markedly bizarre delusional thinking. He does not report having significant obsessions or compulsions. His long term and short term memory appear to be generally intact. His intelligence appears to be around average. His insight and judgment appear to be generally fair.

(R. at 403).

In this Stairways report, Plaintiff's diagnosis was Unspecified Episodic Mood Disorder, PTSD, and a current GAF of 50 (R. at 403).[1] Plaintiff was taking Zoloft 100 mg per day, BuSpar 10 mg three times a day, and Seroquel 600 mg every evening. The dosage of Zoloft was increased for depression (R. at 402-03).

*Summary of Testimony*

Plaintiff filled out a Functional Report on September 2, 2008 (R. at 197- 206). Notably, Plaintiff states in this report that he does not notice any unusual behavior or fears in himself (R.

---

[1] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R). The greater the number the higher the functioning of the individual.

6

at 203). This report was almost entirely focused on Plaintiff's back pain. Plaintiff filled out a subsequent Functional Report on October 6, 2009 (R. at 208- 217). In this report Plaintiff states, "When I wake up I don't feel like doing anything. I am mad and sad at the same time. I don't remember things well and don't know why I feel the way I do. I just sleep a lot and cry and scream a lot!" (R. at 208). Plaintiff states his wife does everything, including reminding him of personal hygiene maintenance (R. at 209). Plaintiff states he has trouble concentrating and is often confused (R. at 212). Plaintiff asserts that his mental illness affects his memory, concentration, completing tasks, understanding, and getting along with others (R. at 213).

In his October 1, 2008 report mentioned above, Dr. Bailey reported Plaintiff to have slight restrictions in understanding and remembering short, simple instructions and carrying out the instructions (R. at 282). He reported moderate restrictions in remembering and carrying out detailed instructions and making judgments on simple work-related decisions (R. at 282). Dr. Bailey also states that Plaintiff had slight restrictions on interacting appropriately with the public, supervisors and coworkers (R. at 282). Further, he states there is moderate restriction in Plaintiff's ability to respond appropriately to work pressures in the usual setting or to changes in a routine work setting (R. at 282).

A Mental Residual Functional Capacity Assessment ("RFC") was performed on Plaintiff on October 9, 2008 by Richard A. Heil, Ph.D (R. at 283-300). Dr. Heil found the Plaintiff to be moderately limited in the following areas: The ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, the ability to maintain regular attendance, and be punctual within customary tolerances, the ability to complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to set realistic goals or make plans independently of others. In all other areas Dr. Heil found the Plaintiff was not significantly limited (R. at 283-300).

In his narrative, Dr. Heil notes Plaintiff's medically determinable impairment of Major Depressive Disorder ("MDD") but points out that Plaintiff has not had any hospitalizations because of his mental impairment (R. at 286). Dr. Heil states that he has given the October 1, 2008 report of Glenn Bailey, Ph.D. great weight in his determinations and goes on to state:

> The claimants' basic memory processes are intact. He can perform simple, routine, repetitive work in a stable environment. He can understand, retain, and follow simple job instruction, i.e., perform one and two-step tasks. He is able to maintain concentration and attention for extended periods. Moreover, he is able to maintain socially appropriate behavior and can perform the personal care function needed to maintain an acceptable level of personal hygiene. He is capable of asking simple questions and accepting instruction. Additionally, he would be able to make simple decisions. He can sustain an ordinary routine and adapt to routine changes without special supervision. In addition, he remains capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace.

(R. at 286).

Dr. Heil notes the Plaintiff to have moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace (R. at 298). Dr. Bailey's December 7, 2009 restrictions are identical to Dr. Heil except that Dr. Bailey places Plaintiff in the "marked" category for Plaintiff's ability to understand and remember detailed instructions, ability to interact with coworkers, ability to respond to pressures in a usual work setting (R. at 349-50).

On December 11, 2009 another Mental RFC was performed on Plaintiff by Kerry Brace, Psy.D. (R. at 352-368). Dr. Brace relied upon the report provided by Dr. Bailey on December 7,

8

2009 and said he has given appropriate weight to Dr. Bailey and his assessment is partially consistent with Dr. Bailey's report (R. at 354). Namely, Dr. Brace asserts that Dr. Bailey's opinion in the areas of Plaintiff's ability to make personal and social adjustments and other work related activities are not consistent with the medical and non-medical evidence in the claims folder (R. at 354).

Dr. Brace notes Plaintiff as markedly limited in his ability to understand and remember detailed instructions (R. at 352). He also notes Plaintiff to be moderately limited in his ability to carry out very short and simple instructions, his ability to carry out detailed instructions, and his ability to maintain attention and concentration for extended periods of time (R. at 352). He further states that Plaintiff is moderately limited in his ability to work in coordination with or proximity to other without being distracted by them, his ability to make simple work-related decisions, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, his ability to interact appropriately with the general public, his ability to accept instructions and respond appropriately to criticism from supervisors, his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, and the ability to travel in unfamiliar places or use public transportation (R. at 352-53).

Dr. Brace provides the following narrative:

> The claimant can perform simple, routine, repetitive work in a stable environment. He can understand, retain and follow simple job instructions, i.e., perform one and two step tasks. He is capable of working within a work schedule and at a consistent pace. He would be able to maintain regular attendance and be

punctual. Moreover, he would not require special supervision in order to sustain a work routine. He is capable of asking simple questions and accepting instruction. Additionally, he can function in production oriented jobs requiring little independent decision making. Review of the medial evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

(R. at 354).

Based on the evidence of record, the claimant's statements are found to be partially credible.

(R. at 354).

Dr. Brace states, "The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (R. at 356). Dr. Brace finds the Plaintiff's degree of limitation in the following areas is moderate: Restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace. (R. at 366). Dr. Brace's final diagnosis is major depression, recurrent, PTSD, psychological factor affecting medical condition, and a GAF of 45.

*IV. Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247

F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F) (2012).

## V. Discussion

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or

equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In this case, The ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. at 39-40). More specifically, the Plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation (R. at 40). According to Defendant's analysis of the medical record, Plaintiff did not meet this criteria. However, we found evidence on the record that examining-doctor Bailey determined Plaintiff to have marked restrictions in the areas of ability to understand and remember detailed instructions, ability to interact with coworkers, and ability to respond to pressures in the usual work setting (R. at 349-50). Non-examining Dr. Brace also noted that Plaintiff is markedly limited in his ability to understand and remember detailed instructions, however, he does not agree entirely with Dr. Bailey's restrictions for Plaintiff (R. at 352). Because of the discrepancy in the record we are not certain that step (4) in the Commissioner's evaluation is satisfied.

The Commissioner, moving forward, uses the sequential evaluation process and determines at step (5) that the Plaintiff has not met his burden of proof that he cannot work in some capacity in the national economy. The Commissioner relied on the ALJ's determination that despite the Plaintiff's impairments, Plaintiff retained the capacity to perform light work that is simple, unskilled, and routine, requires only low concentration, low stress, and only occasionally contact with supervisors, the public, and co-workers (R. at 41).

The ALJ also determined the Claimant's statements are not credible to the extent they are inconsistent with his RFC assessment below (R. at 42).

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant can stand for 20 minutes, and sit for 20 minutes, consistently on alternate basis, for 8 hours a day, 5 days a week. The claimant should avoid heights, hazardous machinery, temperature and humidity extremes. The claimant can perform jobs [with] only little reading, writing or communication. The claimant could perform simple unskilled, routine work, svp 2 in nature, low concentration, low memory, and low stress. The claimant should have only occasionally contact with supervisors, the general public and co-workers.

(R. at 41).

Based on the VE's testimony, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy and, therefore, was not disabled under the Act (R. at 47-48). More specifically, the VE testified that given all the factors involved in Plaintiff's case, he would be able to perform the requirements of representative occupations such as folder, fruit cutter, nut sorter, and cuff folder all of which exist in the national economy in significant numbers (R. at 47-48).

In support of his motion for summary judgment, Plaintiff generally argues that the ALJ's decision was not in accord with the proper legal standards, that it did not have reasonable basis in

the law and was not supported by substantial evidence [ECF No. 9 at 1]. More specifically, Plaintiff argues that the opinions of examining psychologist Bailey as to the Plaintiff's mental functional limitations were improperly assessed by the ALJ as were the opinions of the non-examining state agency sources. Lastly, the mental health treatment records from Dr. Simora (R. at 374-395) and from Stairways Behavioral Health (R. at 396-404) were also improperly assessed [ECF No. 9 at 11].

Plaintiff asserts that the ALJ solely relied upon opinion evidence from Heil (non-examining state agency psychologist), Brace (non-examining state psychologist), and Bailey (examining consultative psychologist) [ECF No. 9 at 11]. Furthermore, Heil's report relies heavily on Baily's opinions [ECF No. 9 at 12]. Both of these reports were performed during the Plaintiff's prior disability application [ECF No. 9 at 12]. The Plaintiff asserts the reliance on these sources is improper under Social Security law. The opinions of non-examining medical sources are to be "weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions than are required for treating sources." (Social Security Rule 96-6p).

> [B]ecause nonexamining sources have no examining or treating relationship with [the Plaintiff], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F. R. § 416.927(c)(3).

It is not apparent that the non-examining sources reviewed the psychiatric treatment records dated June 2008-October 2010 from Dr. Simora. Dr. Simora's records both predated and postdated the non-examining source's report. In addition, there is no indication of a review of Stairways Behavioral Health records dated January 2011-May

14

2011 [ECF No. 9 at 13]. Generally more weight is to be given to the opinions of an examining source than to the opinions of non-examining sources and even more weight is generally given to the opinions of the treating source. See 20 C.F.R § 416.927(c)(1) and (2). The Third Circuit precedent provides that the ALJ must analyze all relevant, probative evidence and provide adequate explanation for disregarding evidence. See Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001); Burnett v. Commissioner, 220 F.3d 112, 121-22 (3d Cir. 2000); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981).

While Defendant recognizes that Drs. Esper and Simora are treating medical sources, the ALJ does not accept these opinions. He states he does not accept their opinions because they are not supported by medical signs and laboratory findings, and are inconsistent with the record as a whole (R. at 46). Defendant further asserts that the findings of these Doctors are generally based on narrative of the Plaintiff and the ALJ and the Commissioner did not find the Plaintiff to be credible (R. at 42). Namely, the ALJ found that the Claimant's statements concerning intensity, persistence, and limited effects of his symptoms are not credible to the extent they are inconsistent with the RFC (R. at 42).

We find the Commissioner's arguments to be circular and disagree with the Commissioner that the ALJ's decision was supported by substantial evidence taking into account the record as a whole. "[T]he failure of an administrative law judge to mention and explain medical evidence adverse to his position has deprived the Secretary of the substantial evidence necessary to sustain his determination." Wier v. Heckler, 734 F.2d 955, 956 (3d Cir. 1984). While the end result determination may not change, the Commissioner's analysis must be complete and reflected on the record.

15

The claimant bears the burden of proving not only that he has an impairment expected to result in death or last continuously for a year, but also that it is so severe that it prevents him from performing any work See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Bowen v. Yuckert, 482 U.S. 137, 147 (1987). The Commissioner evaluates a disability claim by considering whether the claimant (1) is working; (2) has a severe impairment; (3) has a listed impairment; (4) can return to his past work; and (5) can perform other work. See 20 C.F.R. §§ 404.1520, 416.920. As stated above, in the Commissioner's analysis she reached the question of whether Plaintiff could perform past work or any other work in the economy, however, we don't believe the Commissioner adequately proceeded through step 4. Should the Commissioner satisfy step 4, then the Plaintiff bears the burden of proving that his RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weight a claimant's complaints about his symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

In this case, as mentioned above, a conflict occurred between two medical providers, Dr. Brace and Dr. Bailey. However, the ALJ provided no discussion of why he paid greater deference to Dr. Brace's determination that there were not "marked" limitations (See R. at 40). When the medical evidence of record conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F. 3d 422, 429 (3d Cir. 199). The ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or

speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429. Here the ALJ's determination gave greater weight to the consultative doctors and he did not provide enough information or reasoning in his decision to prove that his decision was supported by substantial evidence.

Furthermore, we do not believe that the ALJ properly weighed the treating sources testimony against the non-examining sources. Absent from the ALJ's summary is a discussion of the most recent evaluations by Stairways which shows a deterioration in Plaintiff's condition. The ALJ makes no mention of Plaintiff's condition as it is described it in the most recent medical report. Furthermore, the ALJ does not go through the steps to justify the weight he gave to this report. In addition, we do not find the ALJ properly weighed the Claimant's complaints against the record as a whole when making a determination of credibility. We find the record is consistent with the Plaintiff's chief complaints and there was little conflict in reports, diagnoses, and what the Plaintiff experienced. While the RFC indicated the Plaintiff could perform some work, it did not undermine the Plaintiff's credibility. In addition, the RFC seems to mainly concentrate on the Plaintiff's ability to physically handle a job with relation to his back pain, however, it does not fully address the social and emotional restrictions that Plaintiff faces due to his mental health illnesses.

We find that the ALJ did not provide substantial evidence for his determination that Plaintiff was not credible nor do we find that the ALJ substantiated his determination that Plaintiff could perform simple unskilled, routine work, low concentration, low memory, and low stress where he would have only occasionally contact with supervisors, the general public, and co-workers with medical evidence of record.

*VI. Conclusion*

For the foregoing reasons, we conclude that there is not substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled, and therefore, the Defendant's Motion for Summary Judgment is denied. We further find that in this case remand is required so that ALJ can provide an explanation for the apparent rejection of the treating physicians' opinions regarding Plaintiff's limitations and to provide support for the weight given to the consultative doctors' reports as well as provide commentary on the relevant and pertinent reports provided most recently by Doctors Su and Simora. The Plaintiff's Motion for Summary Judgment is granted to the extent that it seeks remand to the Commissioner for further proceedings consistent with this Opinion, and otherwise is denied. This matter is remanded to the Commissioner for a decision not inconsistent with this Opinion. An appropriate order will be entered.

Date: *March 5, 2014*

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: counsel of record

18